UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICIA S. WHITE and
ERNEST L. WHITE

CIVIL ACTION

VERSUS

NO. 17-7907

BRE NOLA PROPERTY OWNER, LLC, et al

SECTION A (3)

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 16)** filed by Defendants, BRE NOLA Property Owner, LLC and Zurich American Insurance Company. Plaintiff Patricia S. White opposes the motion (Rec. Doc. 26) and Defendants have replied. (Rec. Doc. 30). The motion, set for submission on May 16, 2018, is before the Court on the briefs without oral argument. This matter is set to be tried to a jury beginning on July 9, 2018. Having considered the motion, memoranda of counsel, the record, and the applicable law, the Court finds that Defendants' **Motion for Summary Judgment (Rec. Doc. 16)** is **DENIED** for the reasons set forth below.

**I.   Background**

Plaintiff Patricia S. White traveled from her home in Mobile, Alabama to New Orleans with her two sisters on June 14, 2016. The women were planning on spending the night in New Orleans to attend a local event. Upon arriving in New Orleans, the women visited a local restaurant to eat lunch then proceeded to check-in at the Hampton Inn and Suites on Carondelet Street located in the city's Central Business District. Once checked in at the hotel, Plaintiff proceeded to take a smoke-break. Because guests were not allowed to smoke inside, Plaintiff exited the hotel's main entrance/exit facing Carondelet Street then turned to the right towards the hotel's outdoor smoking

1

area.[1]  Around 6:10 p.m., Plaintiff began smoking her cigarette at the smoking area.  According to photographs in the record, the smoking area consists of a small raised brick platform, or "landing," that abuts the hotel near the entrance.  The landing also has a smoker's pole that smoker's use to dispose of cigarettes.  While smoking her cigarette, Plaintiff states that there were several others doing the same, but she recalls having a conversation with a middle-aged man.  Plaintiff further states that although she does not recall whether the ground around the smoking area was wet or dry, she does remember it raining on that particular day.  (Rec. Doc. 16-4, pp. 6–11).  Upon finishing her cigarette, Plaintiff proceeded to put the cigarette out in a smoker's pole located on the landing.  According to her deposition, Plaintiff believes she stepped up onto the landing to smoke, but upon stepping back after disposing of her cigarette, she tripped and fell because of the height difference between the landing and the sidewalk.  *Id.* at 20.  Plaintiff's hip hit the ground first followed by her ankle.  After her fall, Plaintiff was taken to the University Medical Center by ambulance.  Plaintiff alleges her fall resulted in serious bodily injury and seeks general damages, lost wages, loss of earning capacity, medical expenses, expert witness fees, and all other court costs.  (Rec. Doc, 1-1).

A main point of contention in this lawsuit is the smoking landing.  According to the exhibits and deposition testimony presented by both parties, the smoking area is located a few steps away from the front entrance of the hotel.  Defendants' expert, Kevin Vanderbrook, describes the landing as follows:

> The area of the incident is located on the exterior of the Hampton Inn hotel.  There is a raised brick platform which serves as a smoking area for guests.  Additionally, there is a fire exit from the interior stairwell which provides access to the street and opens to this platform.  The platform measures approximately 66 ½ inches wide and approximately 63 ½ inches deep.  The platform is finished with a combination

---

[1] Plaintiff also stated that this was her first time staying at this particular hotel, and she was unaware of the hotel's particular smoking area until she ventured outside to smoke.

of herringbone and soldier course brick pavers. There is an ashtray located on the platform for disposing of cigarette butts.

(Rec. Doc. 16-18, p. 5). According to Vanderbrook's conclusions, the "raised platform at the emergency exit/smoking platform location is finished with brick pavers in contrasting patterns which make the edge readily apparent to persons paying a reasonable amount of care and attention." *Id.* at p. 7. Vanderbrook also concludes that the "edge of the platform is readily apparent due to a contrasting pattern in the bricks." *Id.*

On the other hand, Plaintiff's expert, Mitchell Wood, notes that "[s]ince the brick was the same on the sidewalk as the 'smoking' platform, the surfaces can appear to blend. The brick platform edge would appear indistinguishable unless notified or 'forwarned.'" (Rec. Doc. 26-5, p. 3). Wood also states that the landing's dropoff was difficult to discern due to the similar brick paver surface of the landing and the abutting sidewalk. Wood ultimately concludes that "in [his] judgment, this brick platform is clearly not 'apparent' to a pedestrian unfamiliar with the premises." (Rec. Doc. 26-5). With the relevant facts provided, the Court now outlines the applicable legal standard.

**II.     Legal Standard**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255).

3

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

### III. Law and Analysis

Plaintiff asserts that the smoker's landing at issue outside of the Hampton Inn constituted a "dangerous and/or defective condition" causing her to fall and sustain injuries. Specifically, Plaintiff's Petition for Damages states:

> The cause of plaintiff's accident and injuries was the dangerous, defective and ruin condition of the raised platform on the premises owned by defendant, in the following but not exclusive particulars:
>
> a) Allowing a dangerous and/or defective condition to exist;
> b) Failing to inspect for such a dangerous and/or defective condition;
> c) Failure to provide a safe smoking area for its guests;
> d) Violation of City, State and Federal Codes and laws which violation was a direct cause of the accident;
> e) Knowing the ruin, vice or defect existed and failing to correct the same;
> f) Failure to exercise reasonable care to discover and/or correct the ruin, vice or defect;
> g) Having known or should have known that the damage sustained herein was foreseeable and could have been prevented by the exercise of reasonable care;
> h) Failing to warn plaintiff of the dangerous change in elevation from the platform to the sidewalk;
> i) Failure to provide guardrails/handrails on the raised platform to prevent guests from falling off the raised platform;
> j) Failure to adequately illuminate the designated smoking area where the accident occurred;
> k) Any and all other acts of negligence to be proven at trial.

(Rec. Doc. 1-1, pp. 2–3).

The substantive law governing this negligence action is Louisiana state law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Under *Erie*, this Court must first look to the final decisions of the Louisiana Supreme Court in order to determine the appropriate Louisiana law. *Howe v. Scottsdale Ins. Co.*, 204 F.2d 624, 627 (5th Cir. 2000) (citing *Labiche v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 351 (5th Cir. 1994)). If the Louisiana Supreme Court has not ruled on an issue, then a federal court must make an "*Erie* guess" to determine "as best it can" what the Louisiana Supreme Court would decide. *Id.* (quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999)). In making an *Erie* guess in the absence of a ruling from the state's highest court, a federal court may look to the decisions of intermediate appellate state courts for guidance. *Id.* (citing *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir. 1998)).

According to Louisiana Civil Code article 2317.1, custodial liability is codified as follows:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2317.1. Under this article, Plaintiff bears the burden of proving: (1) the property that caused the damage was in the "custody" of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause-in-fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. *Id.*; *Ledet v. United States*, 16-383, 2018 WL 2010024, p. *2–3 (E.D. La. April 30, 2018) (citations omitted). Additionally, plaintiffs must show that the owner/custodian failed to take adequate steps to remedy the defect. *Id.*; *see* La. Civ. Code. art.

2317.1.  Here, Defendant contends that the elevated landing posed an open and obvious risk, and as such, was not unreasonably dangerous.[2]

The motion currently before the Court turns on the second element—whether the property had a condition that created an unreasonable risk of harm to persons on the premises.  In determining whether the risk of harm posed by a defect is "unreasonably dangerous," courts generally employ a risk-utility balancing test in which they consider the following four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature." *Lester v. Valero Refining-Meraux, LLC*, No. 14-80, 2015 WL 729703, at *3 (E.D. La. Feb. 19, 2015) (citing *Dauzat v. Curnest Guillot Logging, Inc.*, 08-0528 (La. 12/2/08); 995 So.2d 1184, 1186–87 (citing *Hutchinson v. Knights of Colombus, Council No. 5747*, 03-1533 (La. 2/20/04); 866 So.2d 228, 235))).  Because the duty of an owner is governed by a reasonableness standard, "where a risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable." *Id.* (citing *Hutchinson*, 866 So.2d at 236).  As such, when a risk is obvious to all, an owner has no duty to warn of or prevent any injury which may arise from the defect and is not liable for negligence. *Id.* (citing *Henshaw v. Audubon Park Com'n*, 605 So.2d 640, 641 (La. App. 4 Cir. 1992)).

Here, considering the first factor of the risk-utility balancing test, the elevated landing appears to have a utility in that "there is a fire exit door adjacent to [the] landing.  If the landing did not exist, then the door would exit out to a sharp drop-off, which would create a hazard to

---

[2] Because they do not bear the burden of proof at trial, Defendants are required only to show that Plaintiff is unable to prove an essential element of her negligence claim.  The question of custody is at issue, but was not thoroughly briefed.  The remaining elements of knowledge and causation are not at issue in this motion, and the Court will only address Defendants' argument that the elevated landing did not pose an unreasonable risk.

6

patrons escaping the upper floor hotel rooms, walking down the stairs, and then outside of the outside hotel [sic]." (Rec. Doc. 16-3, pp. 8–9). Plaintiff argues otherwise, stating that the elevated platform serves no utility. (Rec. Doc. 26, p. 7). Instead, Plaintiff argues that the elevated landing is still a hazardous condition because, in the event of a fire, "persons exiting the fire exit door would not be aware that at some point before they would traverse the sidewalk, that they would encounter a 6 inch drop off. . . ." *Id.* The Court agrees with Defendants. Although it may not be a strong utility, the elevated landing does possess a utility. For purposes of the third factor, the cost of preventing the harm appears to be minimal. In his affidavit, Plaintiff's expert Mitchell Wood stated that the horizontal edges of the landing should have been marked by a bright yellow color paint to serve as a strong visual marker for pedestrians, guests of the hotel, and smokers using the landing. (Rec. Doc. 26-5, p. 4). With regard to the fourth factor, while smoking might be inherently unhealthy by nature, the act of walking towards an ashtray to put out a cigarette does not carry the same risk.

As it does in many cases, the dispute in this case revolves around the second factor, namely, the substantial likelihood and magnitude of harm from the elevated landing, with consideration to whether the elevated landing was apparent or obvious. *See Dauzat*, 995 So.2d at 1187. For a defect to be considered open and obvious, "the hazard should be one that is open and obvious to everyone who may potentially encounter it." *Lester*, at *4 (citing *Bufkin v. Felipe's La., LLC, 14-0288* (La. 10/15/14); 2014 WL 5394087, at *4 (citations omitted)).

"Where there are competing expert opinions, the Court finds that there is a genuine issue of material fact precluding summary judgment." *Ledet v. United States*, No. 16-383, 2018 WL 2010024, at *3 (E.D. La. Apr. 30, 2018). As discussed above, Plaintiff's expert, Mitchell Wood, applies the NFPA Life Safety Code to conclude that the presence of a step must be readily apparent.

7

Wood further states that the step in this case was not readily apparent, and therefore, in Woods' judgment, the brick platform was clearly not obvious to a pedestrian unfamiliar with the premises. (Rec. Doc. 26-5, p. 4). On the other hand, Defendants' expert, Kevin Vanderbrook concludes that the edge of the platform is readily apparent due to the contrasting pattern of the bricks. (Rec. Doc. 16-18, p. 7). Accordingly, the two experts have given competing testimony that raises factual issues as to whether the smoking landing was defective sufficient to impede Defendants' motion for summary judgment. For these reasons, the Court finds that Defendants' **Motion for Summary Judgment** is denied.

Accordingly;

IT IS ORDERED that Defendants' **Motion for Summary Judgment (Rec. Doc. 16)** is **DENIED**.

June 18, 2018

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE